# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:08-cv-530-FDW

| | |
|---|---|
| CELANESE ACETATE, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| LEXCOR, LTD., | ) |
| Defendant. | ) |

THIS MATTER comes now before the Court upon Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 16). Plaintiff has responded to the Motion, Defendant has replied, and this matter is now ripe for review. For the reasons discussed below, Defendant's Motion is DENIED.

## BACKGROUND

Plaintiff, an LLC organized under the laws of Delaware with its principle place of business in Dallas, Texas, is a supplier of acetate tow and flake, materials used in the manufacture of cigarette filters. Defendant, a limited liability company organized under the laws of Hong Kong, China, served as Plaintiff's exclusive sales representative in China under the terms of the Amended and Restated Representation Agreement (the "1999 Agreement"). The 1999 Agreement contained the following forum-selection clause:

> GOVERNING LAW. . . . The United States District Court for the Western District of North Carolina is the exclusive forum for the resolution of any dispute which may arise out of this Agreement, and the Parties hereby waive irrevocably any objection they may have to the proper venue or exercise of jurisdiction by that court.

(1999 Agreement ¶ 21, Doc. No. 1-2.) By its terms, the 1999 Agreement expired on December 31, 2000. On December 31, 2000, the parties renewed their relationship with the First Amended and Restated Representation Agreement ("First Amendment"). The First Amendment extended the term of the 1999 Agreement to December 31, 2004, making minor changes to the percentage of commissions payable to Defendant, but otherwise stating that the terms of the 1999 Agreement "shall continue in full force and effect." (First Amendment ¶ E, Doc. No. 1-3.) In October of 2004, Plaintiff sent a draft second amendment in an attempt to negotiate a new agreement prior to the First Amendment's December expiration. The parties were unable to reach an agreement, and the First Amendment expired by its terms on December 31, 2004.

On January 3, 2005, Plaintiff sent Defendant a letter recognizing the expiration of the First Amendment and stating Plaintiff's intention to "continue the Agreements on a month-to-month basis." (Comp. Ex. D, Doc. No. 1-5, at 2.) In the letter, Plaintiff reserved the right to terminate this temporary extension of the Agreements "upon thirty (30) days prior written notice to [Defendant]." (Id.) On January 8, 2005, Defendant's attorney indicated that Defendant was willing to operate on a month-to-month basis. (Comp. ¶ 14.) The parties operated on this month-to-month basis until July 27, 2006, when Plaintiff sent Defendant a letter terminating the parties relationship effective December 31, 2006. In its letter, Plaintiff stated that it would continue to pay to Defendant commissions on the sale of tow and flake, but that all such commissions would cease after December 31, 2006.

On November 24, 2008, Plaintiff brought this action for a declaratory judgment that Defendant was not entitled to further payments for the sale of flake and tow under the 1999 Agreement, First Amendment, or month-to-month arrangement under which the parties operated

until December 31, 2006.  Defendant now moves to dismiss this action, arguing that this Court may not exercise personal jurisdiction over it under either application of the forum-selection clause or the standard minimum contacts analysis.  In the alternative, Defendant moves to dismiss based on the doctrine of *forum non conveniens*.

## STANDARD

The United States Court of Appeals for the Fourth Circuit has clearly stated the standard for a Rule 12(b)(2) challenge:

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.  In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).  Thus, while Defendant is correct that Plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, the present context requires only that Plaintiff make a prima facie showing of a sufficient jurisdictional basis.  See CoStar Realty Information, Inc. v. Meissner, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009) (applying the prima facie standard to a personal jurisdiction challenge involving a forum-selection clause).

## ANALYSIS

**1. Personal Jurisdiction and the Forum-Selection Clause**

It is well settled that a valid forum-selection clause may "act as a waiver to objections to personal jurisdiction." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 282 n.11 (4th

Cir. 2009) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964)). A forum-selection clause is presumed to be valid, a presumption that may be challenged if (1) its formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) its enforcement would contravene a strong public policy of the forum state. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996).

Defendant makes two principle arguments regarding the forum-selection clause: (1) its application would be so inconvenient that Defendant will be denied its day in court; and (2) it was part of the 1999 Agreement and the First Amendment, but not the month-to-month arrangement that governed the parties' interactions between January 3, 2005, and December 31, 2006, and, therefore, is inapplicable to the events giving rise to Plaintiff's Complaint. The Court will address these arguments in turn.

### A. Inconvenience

Defendant's inconvenience argument is essentially an articulation of the second Allen factor.[1] Arguments of inconvenience based upon the expense of litigation are rarely successful in defeating a forum-selection clause's presumption of validity. See Mitsui & Co. (USA), Inc. v. Mira M/V, 111

---

[1] Defendant contests only two of the Allen factors; the Court will therefore assume that the other factors do not apply. However, as this Court has recognized, "The Allen factors do not represent an elemental test, with the satisfaction of each element being a necessary condition. Rather, the factors are just that: factors meant to inform the Court as to the [forum-selection] clause's reasonableness." Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 440 (W.D.N.C. 2008). The following section deals solely with Allen's inconvenience factor. Although Defendant also argues the fourth factor, North Carolina's policy against forum-selection clauses applies only to a provision "entered into in North Carolina." N.C. Gen Stat. § 22B-3 (West 2009). Defendant's supporting materials indicate that it signed the 1999 Agreement in its Beijing office. (Shapiro Aff., Doc. No. 17-2, at ¶ 9.) It would thus appear that the final act of contract formation took place in China, making North Carolina's public policy inapplicable. See Szymczyk v. Signs Now Corp., 606 S.E.2d 728, 733 (N.C. App. 2005).

F.3d 33, 37 (5th Cir. 1997) ("Increased cost and inconvenience are insufficient reasons to invalidate foreign forum-selection . . . clauses."); Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1258 (4th Cir.1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away."); Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 440 (W.D.N.C. 2008) ("[C]ourts are in agreement that the expense of litigation is insufficient to invalidate a forum-selection clause, especially in a diversity case."); Price v. Leasecomm Corp., No. 1:03-cv-685, 2004 WL 727028, at *4 (M.D.N.C. March 31, 2004) ("[A] party seeking to avoid a forum selection clause must prove more than the inconvenience of litigating in a distant forum."). There are no allegations that the forum-selection clause was anything other than the result of a bargained-for exchange; as such, Defendant was presumably compensated for its agreement to the clause. See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 758 (7th Cir.1992) ("[A]dditional expense does not necessarily invalidate a forum-selection clause since [the defendant] was presumably compensated for this burden by way of the consideration it received under the contract."); Gita Sports, 560 F. Supp. 2d at 439-440 ("[T]he parties presumably included th[e] burden [of litigation in the forum] when they calculated the proper consideration to be paid under the contract.").

Defendant also argues inconvenience based upon the unavailability of service of process over nonparty witnesses who, Defendant contends, reside mostly in China. The cases cited by Defendant, however, do not involve motions to dismiss, but rather motions to transfer to other United States districts. See Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc., 502 F. Supp. 2d 531, 539 (W.D. Tex. 2007); DePuy Orthopaedics, Inc. v. Gault South Bay, Inc., No. 3:07-CV-425, 2007 WL 3407662 (N.D. Ind. Nov. 13, 2007). Because Defendant believes the appropriate

forum in this case is a foreign nation, the Court cannot transfer the case, but must either retain or dismiss it. See Gita Sports, 560 F. Supp. 2d at 435 (citing Allen, 94 F.3d at 923). The difference is patent, as transfer merely changes the location of the litigation from one United States district to another, whereas dismissal would require Plaintiff to begin anew in a foreign nation. If a defendant seeking transfer from a proper venue[2] faces "a particularly heavy burden," Commercial Equip. Co. v. Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990), the burden when seeking outright dismissal must be commensurately more difficult. Defendant has not met that burden. While certain witnesses in this case undoubtedly reside in China, surely others will reside in this District given Plaintiff's extensive corporate history here. Furthermore, Defendant's Motion does not provide enough detail as to who these Chinese witnesses will be and why their importance outweighs the importance of witnesses that Plaintiff claims reside here. See 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851 (3d ed. West 2009) (stating that a defendant must provide "sufficient information to permit the district court to determine what and how important the[] [witnesses'] testimony will be").

Defendant's final argument regarding inconvenience is that Plaintiff's choice of forum should be given less deference because North Carolina is no longer Plaintiff's home state. This argument ignores the fact that North Carolina was Plaintiff's home state when the parties executed the 1999 Agreement. Under North Carolina law, which will govern the Court's substantive interpretation of the contract terms, "the rights of the parties are fixed at the time the contract is entered." Wood v.

---

[2]Although venue is not explicitly challenged in Defendant's Motion, the Court notes that venue appears proper because the forum-selection clause specifically names the Western District of North Carolina as the "exclusive" forum. See Gita Sports, 560 F. Supp. 2d at 436; S&D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609-10 (M.D.N.C. 1997). The forum-selection clause is thus mandatory, rather than permissive, and venue in this District is proper.

J. P. Stevens & Co., 256 S.E.2d 692, 700 (N.C. 1979). Thus, Plaintiff's current location is irrelevant, as its right to a North Carolina forum was established at the time of contract formation.

Accordingly, the Court will not hold the forum-selection clause unenforceable based upon inconvenience to Defendant.

    **B.    Expiration of the 1999 Agreement and the First Amendment**

Defendant next argues that the forum-selection clause was a part of the 1999 Agreement and the First Amendment, but that these agreements expired and were therefore not in force during the time period in question. The Court disagrees. Although not controlling, the Court finds persuasive the reasoning in Atofina Chemicals, Inc. v. Sierra Chemical Co., No. 03-2528, 2004 WL 739953 (E.D. Pa. Apr. 5, 2004). In Atofina Chemicals, the defendant to a distributorship agreement consented to personal jurisdiction by signing a forum-selection clause. This agreement was not renewed beyond its one-year term. The defendant conceded that it had consented to the chosen forum during the term of the agreement, but argued that the clause no longer applied because the agreement had expired. The court stated the issue as "whether the terms of the distributorship agreement govern this dispute . . . because the [forum-selection] clause survived the contract's one-year expiration date." Id. at *3. The court found that the terms did govern "because there is sufficient evidence that the parties continued to act under the terms of the contract long after its expiration date." Id. In light of this continued conduct, the court stated that the termination date "has no effect for jurisdictional purposes." Id. at *4. Of central importance was the fact that "defendant never gave any indication that it no longer wished to be bound by the contract." Id.

The implied-in-fact contract reasoning of Atofina Chemicals is based, at least in part, upon the case of Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery and Tobacco Workers'

Intern., 28 F.3d 347 (3d Cir. 1994). Luden has been widely cited for the following:

> [G]eneral principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive.

Id. at 356.[3]

Other courts have refused to find the continued efficacy of a forum-selection clause, but in doing so have pointed to a key fact: the manifest intention of one or both parties to no longer be governed by the agreement or its terms. For example, in Educational Visions, Inc. v. Time Trend, Inc., No. 1:02-cv-1146, 2003 WL 1921811 (S.D. Ind. Apr. 17, 2003), the parties entered into a new, oral agreement upon the expiration of their written agreement. The court framed the issue as "whether a forum selection clause applies to, or even exists with respect to, the parties' current dispute." Id. at *4. The court held that the forum-selection clause did not apply to the dispute, stating, "The dispute between the parties in this case did not arise under the [expired agreement]. Both parties agree that the old agreement had expired, and that the [new] contract presented a new business relationship." Id. Of critical importance was the fact that the defendant told the plaintiff that there was "no contractual agreement," meaning that the old agreement was no longer in effect, after which the parties formed and were bound by the new agreement. Id. at *3-4.

The United States Court of Appeals for the Eighth Circuit was presented with an analogous situation in Deutsche Financial Services Corp. v. BCS Ins. Co., 299 F.3d 692 (8th Cir. 2002). There, the issue was not a forum-selection clause, but the continued efficacy of certain service contracts.

---

[3]While Luden dealt with a collective bargaining agreement, its reasoning is clearly couched in terms of general contract law. The Court sees no reason why this reasoning should not apply to the instant case.

The court held that there was no basis for applying the contract terms beyond the date of termination because the defendant "clearly and manifestly indicated through its notice of termination letter that it no longer wished to be bound by the Management Agreement." Id. at 698.

Because contract interpretation in a diversity case is a matter of state law, the Court must now determine whether North Carolina courts have a sufficiently established doctrine of implied-in-fact contract. See Harbor Court Associates v. Leo A. Daly Co., 179 F.3d 147, 153 (4th Cir. 1999). North Carolina case law is clear that such agreements are recognized and enforceable as long as mutual assent is manifest from the parties' conduct. As stated by the North Carolina Supreme Court:

> "A 'contract implied in fact,' . . . arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." An implied contract is valid and enforceable as if it were express or written.

Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980) (quoting 17 C.J.S. Contracts s 4b (1963)); see also Kiousis v. Kiousis, 503 S.E.2d 437, 440 (N.C. App. 1998) ("An implied-in-fact contract exists by virtue of the parties' conduct, rather than in any explicit set of words. However, although its terms may not be expressed in words, or at least not fully in words, the legal effect of an implied-in-fact contract is the same as that of an express contract in that it too is considered a 'real' contract or genuine agreement between the parties.") (citation omitted); Ellis Jones, Inc. v. Western Waterproofing Co., Inc., 312 S.E.2d 215, 218 (N.C. App. 1984) ("An implied in fact contract is a genuine agreement between parties; its terms may not be expressed in words, or at least not fully in words. The term, implied in fact contract, only means that the parties had a contract that can be seen in their conduct rather than in any explicit set of words.").

Perhaps most important to Defendant's Motion, the issues of mutual assent and intent of the parties under an implied-in-fact contract theory are "questions for the trier of fact." Snyder v. Freeman, 266 S.E.2d at 602. In this declaratory judgment action, it remains unclear who the trier of fact will be. Plaintiff has not requested a trial by jury, but Defendant, who has yet to answer, may do so. See Golden v. Kelsey-Hayes Co., 73 F.3d 648, 662 (6th Cir. 1996) ("In actions seeking declaratory relief, the right to a jury trial is preserved only where it otherwise exists."). This action being a basic dispute over contract interpretation, Defendant has the right to a trial by jury if it so desires. See, e.g., Krajewski v. American Honda Finance Corp., 557 F. Supp. 2d 596, 612 (E.D. Pa. 2008) (reserving issue of contract construction in a declaratory judgment action for the jury). Even should Defendant not wish to exercise its right to a jury trial, the parties must present the facts to the Court after discovery, not in this jurisdictional phase of the litigation. The issue of mutual assent therefore remains to be determined at a later date.

In light of the current procedural posture, construing the allegations in the light most favorable to Plaintiff, the parties appear to have assented to a continuation of the 1999 Agreement and the First Amendment by continuing to act under the terms of those agreements. The only difference after December 31, 2004, was that the parties operated on a month-to-month basis rather than with a fixed date of termination. In all other respects, it appears that between January 4, 2005, and December 31, 2006, the parties engaged in business just as they had when the antecedent agreements were in effect. The Court notes the one offered fact that might suggest otherwise: Defendant's statement that it "did not agree to simply amending the 1999 Agreement but continued its attempts to negotiate a new agreement." (Def.'s Mem., Doc. No. 17, at 4-5.) However, the Court simply cannot hold as a matter of law that this declaration of "attempts to negotiate" sufficiently

demonstrates a lack of mutual assent. The countervailing facts—that the parties continued to act under the terms of the 1999 Agreement and First Amendment for nearly two years—are simply too strong.

Defendant argues that an implied-in-fact contract theory is unreasonable because it means the parties have "consented in perpetuity to the jurisdiction in North Carolina throughout the life of their business dealings and those of any future assignees." (Def.'s Mem., Doc. No. 17, at 12.) Defendant's argument rests on the faulty assumption that it lacked the power to change the contractual relationship. Defendant had but to "clearly and manifestly indicate[] . . . that it no longer wished to be bound" by either the forum-selection clause or the 1999 Agreement and First Amendment in general. Deutsche Financial Services, 299 F.3d at 698. Such a manifestation would have indicated Defendant's intent to operate under a "new business relationship" rather than the old one. Educational Visions, 2003 WL 1921811, at *4. The reason for this is apparent: an indication that Defendant no longer wished to operate under the old agreements would make it clear that the parties had been operating without mutual assent to the terms of those agreements. On the other hand, the absence of such an indication, coupled with Defendant's continued action under the agreements, creates a sufficient factual issue as to mutual assent and implied-in-fact contract for Plaintiff's case to proceed beyond this jurisdictional phase.

Finally, Defendant argues that an implied-in-fact contract "would not be governed by North Carolina law or required to be brought in a North Carolina court." (Def.'s Mem., Doc. No. 17, at 11.) Defendant provides no citation or reasoning for this conclusory assertion. The 1999 Agreement contains a North Carolina choice-of-law clause which would seem to be a part of the parties' relationship for the same reason the Court has found the forum-selection clause applicable. This

Court, under the Klaxon principle, looks to North Carolina's choice-of-law rules to determine the enforceability of a choice-of-law clause. See Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). In this instance, a North Carolina court would apply the test from Restatement (Second) of Conflict of Laws § 187(2). See Cable Tel Services, Inc. v. Overland Contracting, Inc., 574 S.E.2d 31, 33-34 (N.C. App. 2002). The Court will not undertake the entirety of the § 187(2) analysis at this time; suffice it to say that there appear to be more than enough facts to satisfy the "reasonable basis" requirement of that test, thereby justifying the application of North Carolina law.[4]

**2. Forum Non Conveniens**

Courts have generally held that a mandatory and valid forum-selection clause precludes the defense of *forum non conveniens*. See, e.g., AAR Intern., Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 526 (7th Cir. 2001) (holding that "the appellees' *forum non conveniens* motion must fail unless they can demonstrate" unreasonableness under M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) and its progeny); Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 37 (5th Cir. 1997); Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 979-80 (2d Cir. 1993) (addressing *forum non conveniens* only because the forum-selection clause was permissive, not mandatory); Bank of America Corp. v. Lemgruber, 385 F. Supp. 2d 200, 235 (S.D.N.Y. 2005) ("[A] plaintiff's forum choice that is consistent with a mandatory forum selection clause in a contract signed by the parties and encompassing the causes of action brought by the plaintiff is entitled to 'nearly conclusive deference.'"); Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti,

---

[4]See generally Steven N. Baker, Foreign Law Between Domestic Commercial Parties: A Party Autonomy Approach with Particular Emphasis on North Carolina Law, 30 Campbell L. Rev. 437, 441-46 (2008) (analyzing the § 187(2) test and its application by North Carolina courts).

15 F. Supp. 2d 47, 54-55 (D.D.C. 1998) (stating that the *forum non conveniens* analysis "changes when the parties have agreed to a forum-selection clause," becoming in essence the reasonableness test from M/S Bremen); Standard Quimica De Venezuela, C.A. v. Central Hispano Intern., Inc., 989 F. Supp. 74, 76 (D.P.R. 1997) ("[W]hen a choice-of-forum clause is applicable, *forum non conveniens* arguments should be excluded."); Cambridge Nutrition A.G. v. Fotheringham, 840 F. Supp. 299, 300-01 (S.D.N.Y. 1994).

There is, however, a minority position. See, e.g., Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 51-52 (1st Cir. 1990) ("[E]ven though a foreign jurisdiction was chosen by the parties, that fact should not preclude the application of the sound principles of *forum non conveniens* enunciated in Stewart and similar cases."); American Home Assurance Co. v. TGL Container Lines, Ltd., 347 F. Supp. 2d 749, 768 (N.D. Cal. 2004) ("[E]ven a mandatory forum selection clause does not necessarily give rise to a conclusive presumption that this court is a convenient forum for litigating plaintiffs' claims.").

The Court has been unable to find Fourth Circuit precedent on this issue. In the absence of controlling authority, the Court is most persuaded by the majority position. The Court has already determined that the forum-selection clause is mandatory and that it satisfies the M/S Bremen test for reasonableness as articulated by Allen. Any additional discussion of the *forum non conveniens* factors in Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) would seem superfluous. In any event, Defendant's discussion of *forum non conveniens* rests almost exclusively on the first element of the test: whether there is an alternative forum. See id. at 241-42. Defendant then attempts to satisfy the second element with a cursory list of the private and public factors, provided without factual context. This sparse record is almost certainly insufficient for the Court to employ the "exceptional tool" of

*forum non conveniens*. Hsu v. OZ Optics Ltd., 211 F.R.D. 615, 618-19 (N.D. Cal. 2002) ("[D]efendant has failed to marshal facts demonstrating why the public or private factors warrant dismissal. . . . Having failed to develop such a record here, defendant's motion for dismissal on *forum non conveniens* grounds must be denied.").

## **CONCLUSION**

In sum, the Court holds that the forum-selection clause is not so gravely inconvenient as to deprive Defendant of its day in court. In addition, the Court holds that the parties' continued conduct under the terms of the 1999 Agreement and First Amendment is sufficient, given the current procedural posture, to demonstrate an implied-in-fact contract under North Carolina law. Under this theory, the terms of the antecedent agreements, including the forum-selection clause, enjoyed continued efficacy until the parties clearly manifested by word or action that they no longer wished to be governed by those terms. The forum-selection clause is therefore valid and enforceable, acting as a waiver to personal jurisdiction. As such, the Court need not conduct an extensive minimum contacts analysis to determine whether exercising personal jurisdiction over Defendant comports with due process. Finally, the Court declines to conduct an extensive *forum non conveniens* analysis, adopting the majority position that such an analysis in unnecessary in the presence of a valid and mandatory forum-selection clause.

Accordingly, Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Signed: July 8, 2009

Frank D. Whitney
United States District Judge